IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AWILDA RODRIGUEZ
    Plaintiff,
                                CIVIL ACTION
v.                                            NO. 16-4322

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*
    Defendant.

## MEMORANDUM

**Jones, II J.**                                                         **March 20, 2018**

### I. Introduction

Plaintiff commenced the within action after being denied Supplemental Social Security Income Benefits and Disability Insurance Benefits. Upon review by United States Magistrate Judge Jacob P. Hart, a Report and Recommendation (R&R) was issued affirming the Administrative Law Judge's (ALJ) denial of said benefits. Plaintiff has filed objections to the R&R, which are now before this Court for review. For the reasons set forth below, Plaintiff's objections shall be granted and the matter shall be remanded to the Commission of the Social Security Administration for further proceedings.

### II. Background

#### A. Procedural History

On September 9, 2013, Plaintiff submitted applications for Disability Insurance Benefits and for Supplemental Security Income, in which she alleged disability beginning July 4, 2013. (Admin. R. 220, 227.) Said applications were initially denied on February 19, 2014. (Admin. R. 104, 109.) Plaintiff filed a written request for a hearing on the decision on April 17, 2014, which

was held via video on September 23, 2014 and presided over by ALJ Lawrence J. Neary. (Admin. R. 113.) On December 2, 2014, ALJ Neary issued an unfavorable decision regarding Plaintiff's claims. (Admin. R. 19.) On January 28, 2015, Plaintiff filed a Request for Review of the ALJ's determination, which was denied by the Appeals Council on June 21, 2016. (Admin. R. 17.) As such, Plaintiff commenced the above-captioned action on December 12, 2016. Upon completion of briefing, this matter was referred to United States Magistrate Judge Jacob P. Hart for preparation of a Report and Recommendation. Judge Hart ultimately determined that Plaintiff's request for relief should be denied. Plaintiff filed timely objections to Judge Hart's R&R, which are now before this Court for consideration.

### B. Factual History

As of the date of her administrative hearing on September 23, 2014, Plaintiff was 50 years old. (Admin. R. 49.) According to Plaintiff's testimony, she had not engaged in any work for pay or profit since July 4, 2013. (Admin. R. 51.) Prior to that time, Plaintiff was employed as a part time taxi dispatcher, a fast food worker at McDonald's, and a pie line worker at Sweet Street. (Admin. R. 51.)

On July 22, 2012, Plaintiff was admitted to Reading Hospital and Medical Center, and was diagnosed with dental abscess and dental pain. (Admin. R. 312.) Plaintiff was prescribed several medications for the pain and discharged the same day. (Admin. R. 312.) Prior to the discharge, Plaintiff indicated that she was not "under the influence of drugs/alcohol," that she had "no history of substance abuse," and that she had "no unresolved social issues." (Admin. R. 311.) Plaintiff was advised to "[f]ollow up with Primary Care Physician as needed, Follow up with Specialist within 1 week." (Admin. R. 313.)

2

Approximately five months later—November 16, 2012— Plaintiff returned to the hospital complaining of chest pain. (Admin. R. 314.) Plaintiff was diagnosed with acute bronchitis, acute sinusitis, and asthma. (Admin. R. 320.) Prior to discharge, Plaintiff again indicated that she was not "under the influence of drugs/alcohol," that she had "no history of substance abuse[,]" and that she had "no unresolved social issues." (Admin. R. 317.) Upon discharge, Plaintiff was prescribed several medications, was given the number for the Berks Community Health Center with instructions to schedule an appointment, and was told to come back to the emergency room if her condition worsened. (Admin. R. 321.)

From September 6, 2012 to August 1, 2013, Plaintiff received treatment at the Berks Community Health Center, where she was attended to by Dr. Ajay Jani and Nurse Practitioner Cindy Schmeltz. (Admin. R. 412, 414, 422.) On March 19, 2013, Plaintiff called the Berks Community Health Center sick line and talked to Veronica Diaz. (Admin. R. 414.) Plaintiff stated that she had "been experiencing left sided numbness to arm extended down towards leg," that the pain had been going on for days, and that one side was weaker than the other. (Admin. R. 414.) On March 26, 2013, Plaintiff again met with Nurse Schmeltz (Admin. R. 415.) During this visit, Plaintiff complained of— among other things—sharp pain on her left side, which she rated as "seven" on a scale of one to ten, "one" being the least painful. (Admin. R. 415.) Nurse Schmeltz noted that the patient occasionally used marijuana—a potential risk factor. (Admin. R. 417.) On April 4, 2013, an x-ray report from St. Joseph's Medical Center[1] indicated that Plaintiff suffered from "cervical spine degenerative disease C5-C6" and that "there is encroachment upon neural foramina bilaterally." (Admin. R. 422.)

---

[1] Referred to throughout the record as "St. Joe's."

During the course of her treatment at Berks, Nurse Schmeltz indicated that Plaintiff "suffered a TIA and has some difficulties in her speech, thinking, motor control and gait." (Admin. R. 395.) Nurse Schmeltz also stated that "it is recommended at this time, that she not be working to allow her to go to the necessary therapies for her to regain function." (Admin. R. 395.) On her Employability Assessment Form, Nurse Schmeltz indicated that Plaintiff was temporarily disabled and that the temporary disability began August 1, 2013 and was expected to last until December 1, 2014. (Admin. R. 404.)

On July 5, 2013, Plaintiff was admitted to Reading Hospital and was diagnosed with a generalized seizure, as well as numbness and tingling. (Admin. R. 441.) On July 16, 2013, Plaintiff again met with Nurse Schmeltz. (Admin. R. 431.) Plaintiff informed Schmeltz that "she rubbed cocaine on her tooth times 2 for a toothache [but] was clean for 16 years prior to this use." (Admin. R. 431.) During the examination, Nurse Schmeltz noted that Plaintiff had "expressive aphasia" and "[g]eneralized weakness." (Admin. R. 432, 440.)

On October 3, 2013, Plaintiff went to Reading Hospital complaining of a possible stroke. (Admin. R. 451.) Upon examination, the following issues were noted: slurred speech; transient ischemic attack (TIA); cocaine abuse; generalized seizure; cerebral infraction without residual deficits; debility; and, marijuana use. (Admin. R. 451.) Dr. Ray A. Morganti noted in Plaintiff's record that she was "unable to raise left LE above stretcher more than a few inches due to pain in anterior right thigh that patient reports is sore from falling." (Admin. R. 458.)

On January 11, 2014, Plaintiff met with Dr. Celestine Nnaeto. (Admin. R. 554.) The doctor reported that she had slurred speech and that her "short term memory seemed impaired." (Admin. R. 557.) On April 29, 2014, providers with the FamiliCare Counseling Center reported that Plaintiff was molested as a child. (Admin. R. 575.) They further reported that although she

4

had past suicidal ideations, she has no current suicidal thoughts. (Admin. R. 575.) They also reported that Plaintiff had past legal charges for "possession of cocaine, conspiracy, marijuana, school fines, PV [and] simple assault." (Admin. R. 576.) At Plaintiff's July 12, 2014 visit to FamiliCare, Plaintiff was "stressed" and "appeared tearful, depressed, lack of motivation, fearful and passive thoughts of self-harm, self-defeat during the session. Thoughts negative, circumstantial. Sleep poor, disrupted, passive SI with no specific plan, visual/auditory hallucination, panic attacks." (Admin. R. 584.) The therapist further noted that Plaintiff had been "scratching her skin until it is raw, reports lack of motivation for self care, low self esteem, inability to leave house due to panic reaction when exposed to outside stimulus. Will have racing heartbeat and shortness of breath. Intensity is 10, happening through the day, most of the waking hours." (Admin. R. 585.) At that time, she was diagnosed (in part) with "major depression single ep[.]" (Admin. R. 586.)

On July 28, 2014, Plaintiff met with Dr. James A. Coffey, a vascular specialist. (Admin. R. 797.) During that visit, Plaintiff admitted to "depression[,] syncopal episodes[,] and use of tobacco as well as THC." (Admin. R. 797.) The record also showed that Plaintiff last used marijuana in April 2014 and after being clean for 16 years, suffered a relapse of crack cocaine in March 2014. (Admin. R. 799.) Plaintiff was given prescription medications and discharged with instructions to follow up. (Admin. R. 803.)

On August 11, 2014, Plaintiff met with Neurologist Lawrence A. Brzozowski. (Admin. R. 779.) Dr. Brzozowski noted that Plaintiff had a history of polysubstance abuse, prior cocaine use, and recent marijuana and tobacco abuse. (Admin. R. 780.) Dr. Brzozowski determined that Plaintiff had "a postural tremor bilaterally," further noting that the only "muscles that have 5/5 power are her right knee extensor and right foot dorsiflexor. Right sided muscles are generally

4+/5 left sided muscles are 4 to 4-/5 power." (Admin. R. 783.) Dr. Brzozowski also noted that that the "[p]atient stands well by herself. She walks with a quad cane in her right hand with her left leg abducted and a left leg limp and is unsteady." (Admin. R. 783.) Finally, on October 14, 2014, Plaintiff was admitted at Digestive Disease Associates, where she was treated for chronic constipation, generalized abdominal pain, bloating, and dysphagia. (Admin. R. 813.)

### III. Standards of Review

Objections to an R&R issued by a magistrate judge are entitled to *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). However, review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

However,

> In making this determination . . . the court must consider "the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding." *Monsour*, 806 F.2d at 1190. "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

*McClease v. Comm'r of Soc. Sec.*, Civ. No. 08-1673, 2009 U.S. Dist. LEXIS 101190, at *8 (E.D. Pa. Oct. 29, 2009).

> With specific regard to the ALJ's assessment of a plaintiff's claim,
>
>> In order to qualify as disabled, and thus be entitled to benefits, a claimant must demonstrate that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. A claimant is deemed unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. In reviewing claims for disability benefits, an ALJ performs a five-step analysis to determine whether a claimant is disabled.

*Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 503 (3d Cir. 2005) (internal quotation marks and citations omitted).

> The following agency regulation describes the five-step process:
>
>> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (references to other regulations omitted).

A claimant bears the burden of proving Steps 1 through 4 by substantial evidence. At Step 5, the burden shifts to the Commissioner. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

**IV. Discussion**

Plaintiff raises numerous objections to the findings of the Magistrate in support of his R&R. The objections are primarily premised on the fact that the Magistrate did not reject the ALJ's decision for including factual errors on several critical issues "that were harmful because they influenced the ALJ's view of opinion evidence and credibility." (Pl.'s Obj. 2.) Factual errors are subject to the substantial evidence standard. *See Dillow-Lopez v. Berryhill*, No. 16-1442, 2017 U.S. Dist. LEXIS 166720, at *3-4 (M.D. Pa. Oct. 10, 2017) ("[A] number of other courts within this District have recognized the distinction between the review for legal errors as to such matters as the weight afforded treating physicians opinions, as opposed to the review for factual errors which are subject to the substantial evidence standard.") As mentioned above, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg*, 436 F.2d at 1148.

Courts have concluded that substantial evidence cannot be based on factual errors. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (ALJ's decision not supported by substantial evidence when it is based on mistakes and mischaracterization of evidence); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) (rejecting opinion that contained significant contradictions as unreliable); *Coniglio v. Colvin*, No. 15-40, 2016 U.S. Dist. LEXIS 107705, at *31 (E.D. Pa. July. 26, 2016) ("an analysis based on factual errors and mischaracterizations of the evidence cannot

8

provide substantial evidence to find that a claimant's complaints of pain are not credible"); *Shaw v. Schweiker*, 536 F. Supp. 79, 83 (E.D. Pa. 1982) (remanding where ALJ "considered facts in an improper manner and lacked a proper basis for his conclusions.")

Plaintiff argues that in assessing opinion evidence, 20 C.F.R. 404.1527 and 416.927 mandate that the ALJ is "required to consider factors that include supportability and consistency with other evidence." (Pl.'s Obj. 5.) The substantial evidence standard requires that the Court uphold the ALJ's decision if any reasonable person would have relied on the relevant evidence to deny the benefits. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). If the ALJ's decision is supported by substantial evidence, it must be accepted as conclusive. *Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 420 (W.D. Pa. 2010). *See also Young v. Astrue*, 519 F. App'x 769, 771 (3d Cir. 2013) ("Our review is deferential and is limited to determining whether the ALJ's decision is supported by substantial evidence."); *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011) (same); *Sternberg v. Comm'r of Soc. Sec.*, 438 F. App'x 89, 94 (3d Cir. 2011) (same).

### A. ALJ's Finding

Preliminarily, the ALJ found Plaintiff possessed the following impairments, which he rendered "severe" pursuant to 20 CFR 404.1520(c) and 416.920(c):

> [S]tatus post cocaine induced transient ischemic attack and seizure with left-sided weakness, rotator cuff tendinitis, degenerative joint disease of the lumbar spine, obesity, asthma, migraine headaches, a major depressive disorder, polysubstance abuse.

(Admin. R. 24 ¶3.)

9

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to continue performing the exertional demands of light level work. (Admin. R. 28.) In doing so, the ALJ considered a wide variety of evidence presented by the parties. (Admin. R. 28.) The ALJ also considered opinion evidence in accordance with 20 CFR 404.1527 and 416.927, noting that Plaintiff was "subject to disorders characterized as an affective disorder." (Admin. R. 29.)

On July 5, 2013, Plaintiff was diagnosed with a transient ischemic attack and cerebral infraction without residual deficits, secondary to cocaine abuse. (Admin. R. 29.) The ALJ noted that "on that same day, a brain MRI showed no acute intracranial abnormality, and scattered foci in the white matter, most commonly associated with chronic ischemic changes." (Admin. R. 30.) The ALJ also noted that "an MRI scan of the head and neck also showed patency of the intracranial circulation, no significant stenosis." (Admin. R. 30.) The ALJ stated that on April 4, 2013, a cervical spine x-ray showed "degenerative disease at C5-C6 with no encroachment upon neural foramina bilaterally." (Admin. R. 32.)

Plaintiff was "post a cocaine induced transient ischemic and seizure with left-sided weakness." (Admin. R. 30.) The last seizure suffered by Plaintiff prior to the September 2014 hearing was on August 24, 2014, when she received emergency room treatment for recurrent seizures and stress at home. (Admin. R. 30.) Although the ALJ noted that Plaintiff had a history of polysubstance abuse, he also determined that Plaintiff "would be found not disabled without considering the evidence of a history of polysubstance abuse." (Admin. R. 30.)

While the ALJ considered Plaintiff's testimony, he determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms could not be deemed "entirely credible." (Admin. R. 32.) In doing so, the ALJ noted that the "claimant's activities of daily living, along with the clinical and objective findings, are inconsistent with an individual experiencing totally debilitating symptomatology." (Admin. R. 33.) Those daily activities included showering by using a shower chair, doing a little dusting and sweeping, washing laundry with her daughter's help, and preparing simple meals. (Admin. R. 33.)

Additionally, the ALJ presented Vocational Expert Irene H. Montgomery with the following hypothetical:

> So we're going to assume a hypothetical individual with those past jobs limited to light work and further limited to only frequent [sic] climbing of ladders, ropes, scaffolds, ramps and stairs, frequent balancing and further limited to occasional overhead reaching with the left upper non-dominant extremity and further limited to simple, routine, repetitive tasks with only occasional changes in the work setting and only occasional interaction with supervisors. Would that hypothetical individual be able to perform any of her past work?

(Admin. R. 63.)

Utilizing the Dictionary of Occupational Titles, Ms. Montgomery concluded that the individual would be able to perform her past work for one to two-thirds of the work day. (Admin. R. 64.)

The ALJ wrote that "the objective findings in the record have been minimal" with regard to Plaintiff's complaints and that "she recently intensified her efforts to find more symptoms." (Admin. R. 33.) The ALJ further noted that:

> [M]edical examiners reported the claimant had normal reflexes, normal sensation, normal cervical spine, lumbar hip, knee, wrist, elbow, and

11

right shoulder ranges of motion, no crepitus, normal coordination, at
least 4/5 muscle strength, normal muscle tone, clear lungs, no wheezes,
no rales, no rhonchi, and no edema.

(Admin. R. 35.)

Therefore, the ALJ concluded that Plaintiff's "limitations are inconsistent with the totality of the evidence." (Admin. R. 35.)

### B. Assessment of ALJ's Findings

Preliminarily, this Court notes that Defendant has failed to substantively respond to any of Plaintiff's Objections, claiming it need not do so because Plaintiff "essentially argues that the Magistrate Judge erred in not accepting the arguments made in her initial brief." (Def.'s Resp. Objs. 1.) Review of Plaintiff's extensive and thorough objections clearly demonstrates otherwise. The court notes the Third Circuit's holding in *Brown v. Astrue*, 649 F.3d 193, 195 (3d. Cir. 2011):

> If a party timely and properly files [a written objection pursuant to 28 U.S.C. § 636(b)(1)], the District Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* (emphasis added). We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5,6-7 (3d Cir. 1984) (citation omitted).
>
> The District Court misapplied that framework to this case. Brown timely filed written objections challenging the sufficiency of the evidence upon which the Magistrate Judge's findings rested. In considering these objections, the District Court stated that "objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review." *Morgan v. Astrue*, No. 08-2133, 2009 U.S. Dist. LEXIS 101092, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009). That is not correct; *any appeal to a district court based on an objection to a Magistrate Judge's order will "rehash arguments presented to and considered by" the Magistrate Judge. That is—by definition—the very nature of "review."* In SSI appeals, the plain language of § 636(b)(1) and our ruling in *Goney*, make clear that the standard district courts should apply to such objections is de novo. The District Court's articulation of the standard of review was therefore erroneous.

12

*Brown*, 649 F.3d at 195 (emphasis added).

Upon *de novo* review of the record as it stands now, this Court finds that said record does not support the ALJ's conclusions, to the extent necessary. In making his determination regarding Plaintiff's residual functional capacity, the ALJ noted that he considered all of Plaintiff's symptoms, as well as opinion evidence. The ALJ stated that he gave "only partial weight" to the opinion issued by the consultative examiner, Dr. Lawrence Brzozowski. (Admin. R. 31.) The ALJ erroneously found that Dr. Brzozowski reported Plaintiff had "no postural tremor" and that she had "at least 4/5 muscle power with give-away weakness." (Admin. R. 31.) In fact, the record shows that Dr. Brzozowski reported that Plaintiff had a "postural tremor bilaterally," and that "right-sided muscles a [sic] generally 4+/5 left sided muscles are 4 to 4-/5 power." (Admin. R. 783.) The ALJ also incorrectly stated the results of a cervical spine x-ray dated April 4, 2013, when he said it showed "degenerative disease at C5-C6 with no encroachments upon neural foraminal bilaterally." (Admin. R. 32.) In fact, the record clearly provides that the x-ray revealed the presence of "encroachment upon neural foramina bilaterally." (Admin. R. 422.) These are just a few examples of several misstatements of facts that formed the basis for the ALJ's decision.

With respect to information provided by the medical professionals who treated Plaintiff throughout the relevant time period, the treating physician's rule entitles the opinion of a treating physician to controlling weight, absent significant evidence inconsistent with that opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (discussing weight given to opinions of treating physicians). However, the opinions of non-examining physicians can override a treating source's

opinions, provided that the former are supported by evidence in the record. 20 C.F.R. §§ 404.1527(f), 416.927(f). The Third Circuit recently reiterated this standard as follows:

> *Morales v. Apfel* requires that "the ALJ accord treating physicians' reports great weight," but there is no requirement to accept those opinions if they are not supported by sufficient evidence in the record. 225 F.3d 310, 317 (3d Cir. 2000). *See* 20 C.F.R. § 404.1527(d)(2) (explaining that the Commissioner looks to medical opinions to provide evidence, but "the final responsibility for deciding [whether an impairment meets or equals an impairment in the Listing] is reserved to the Commissioner"); *Id.* § 404.1527(b) ("In determining whether [a claimant is] disabled, [the Commissioner] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence."). The ALJ [in this case] gave those parts of [the treating physician's] opinion that were supported by the record great weight. The ALJ also considered [the consulting physician's] opinion . . . [who] . . . concluded that [the claimant's] pace and persistence were within normal limits.

*Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 125 (3d Cir. 2017). *See also Blocker v. Barnhart*, No. 02-CV-6815, 2003 U.S. Dist. LEXIS 25050, at *22 (E.D. Pa. Dec. 19, 2003) ("The weight given to a physician's opinion depends upon the extent to which it is supported by clinically acceptable medical data and laboratory medical techniques."); *Facyson v. Barnhart*, No. 02-3593, 2003 U.S. Dist. LEXIS 10502, at *26 (E.D. Pa. Feb. 27, 2003) ("The opinions of non-examining [consulting] physicians may override a treating source's opinions provided that the former are supported by evidence in the record.").

In this case, the ALJ stated that the report by Dr. Nnaeto "is consistent with the objective and clinical findings of record, and is not otherwise inconsistent with other substantial evidence contained in the case record. (Admin. R. 34.) With regard to the state agency physician and the state agency mental health consultant, the ALJ concluded that their reports were "consistent with and supported by the medical evidence of the record, and therefore, worthy of great probative weight." (Admin. R. 34.) These findings by the ALJ are based upon critical factual errors and cannot be sustained.

14

Although factual errors are not necessarily dispositive of an ALJ's findings, in this case, the number and nature of factual errors resulted in misapplication of relevant regulations. In that same vein, any finding of "substantial evidence" is tainted by these errors and warrants remand for further development and examination.

Additionally, with specific regard to Plaintiff's mental health during the claimed disability period, the Magistrate incorrectly stated that "[t]he ALJ did not have before him any evidence that Rodriguez suffered from hallucinations or suicidal ideation within that period." (R&R 14.) This is simply inaccurate. The record clearly shows that during a therapy session on July 12, 2014, Plaintiff had suicidal ideations and hallucinations. (Admin. R. 584-586.) Because the ALJ only considered Plaintiff's depression and did not consider any information from Plaintiff's July 12, 2014 session or beyond at the September 23, 2014 hearing, remand is necessary. Moreover, Plaintiff's psychological issues were raised to an extent sufficient to warrant examination of evidence that came to bear *after* the ALJ rendered his decision. Namely, Plaintiff's diagnoses of "schizoaffective disorder" and "bi-polar disorder mixed severe with psychotic features." (Admin. R. 837, 854.)

This Court further finds that the ALJ's determination regarding substance abuse warrants clarification because his statement that "[i]t is noted the claimant would be found not disabled without considering the evidence of a history of polysubstance abuse" is ambiguous, at best. (Admin. R. 30.) Considering the evidence of record, an SSI 13-2p analysis should have been conducted in this matter.

It is well settled that:

> Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter*, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340

15

U.S. 474, 488, 71 S. Ct. 456, 95 L. Ed. 456 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson*, 529 F.3d at 203; *Cotter*, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

*Stitzel v. Berryhill*, Civ. No. 16-0391, 2017 U.S. Dist. LEXIS 188415, at *22 (M.D. Pa. Nov. 9, 2017); *see also Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion.").

Upon independent review of the record *in toto* and consideration of the facts obtained therefrom, this Court finds that the ALJ's conclusions regarding Plaintiff's RFC are not supported by substantial evidence of record and that said record requires further development. *See Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) (Third Circuit noting "[t]his Court has long been concerned with ALJ opinions that fail properly to consider, discuss and weigh relevant medical evidence.") (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir. 1979) ("This Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates care on the part of the agency in developing an administrative record and in explicitly weighing all evidence.")).

In view of the foregoing, Plaintiff's objections to the Magistrate's R&R are sustained.

## V. Conclusion

For the reasons set forth hereinabove, this matter shall be remanded to the Commission of the Social Security Administration for further proceedings.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II       J.